IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

**UNITED STATES OF AMERICA**

      v.

**RASUE BARNETT,**

      **Defendant.**

**5:03-CR-243-005 (NAM)**

───────────────────────────────────

## SENTENCING MEMORANDUM FOR DEFENDANT

### Preliminary Statement

Rasue Barnett, then 23 years old and now 25, was arrested on June 24, 2003, and has been detained continuously since then. On February 20, 2004, he entered a plea of guilty to Count 1 of the first superseding indictment pursuant to a written plea agreement. Sentencing is now scheduled for December 2, 2004. As of that date, he will have been in federal custody for 528 days.

Barnett and numerous other defendants were charged in connection with their participation in a racketeering enterprise known as "Boot Camp". The first superseding indictment alleges the commission of 45 overt acts (see ¶8[1]), of which Barnett was involved in three, *to-wit*: overt act nos. 1, 10, and 40. Each of those three overt acts resulted in an arrest and conviction in state court. The overt acts are summarized as follows:

Overt act no. 1, committed on September 13, 1995: Barnett, then age 16, accompanied by Antonio Owens, sold $10.00 worth of cocaine base to an undercover police officer (¶24). He pleaded guilty to attempted criminal sale of a controlled substance in the fifth degree, was

───────────────

[1]Unless indicated otherwise, numbers in parentheses preceded by "¶" refer to the numbered paragraphs in the presentence report.

adjudicated a youthful offender, and was sentenced to 60 days imprisonment and five years probation (¶46).

Overt act no. 10, committed on September 16, 1997: Barnett, then age 18, was found to be in possession of a .22 caliber handgun (¶24). He pleaded guilty to attempted criminal possession of a weapon in the third degree and was sentenced to 1½ to 3 years imprisonment (¶49).

Overt act no. 40, committed on December 10, 2002: Barnett, then age 23, was arrested after he accidentally shot himself with a .25 caliber pistol (¶26). He pleaded guilty to criminal possession of a weapon in the third degree on May 12, 2003, and was out on bail pending sentencing at the time of his arrest in the instant case (¶52). Sentencing is still pending in that case (¶52).

The Probation Department has determined that the offense level is 34 (¶33), subject to adjustments for acceptance of responsibility (¶¶39, 40), for a total offense level of 31 (¶43); that Barnett's total criminal history points are 15, establishing a criminal history category of VI (¶56); and that the resulting guideline range for imprisonment is 188 to 235 months (¶76). The Probation Department has submitted a revised presentence report dated November 23, 2004, with an addendum which summarizes the unresolved objections of defense counsel[2] as well as the potential downward departure motions. This memorandum will address those matters, as well as provide additional information concerning Barnett's background and character.

---

[2]The addendum states, *inter alia*, that Barnett objects to the two-level weapons enhancement pursuant to U.S.S.G. §2D1.1(b)(1), as set forth in the presentence report (¶33). Although this issue was discussed at the sentencing conference, it was not included in the written objections submitted by defense counsel. In any event, the addendum contains an accurate statement of the applicable law in the Second Circuit, and defense counsel concedes that there is no good faith argument to be made against the application of this specific offense characteristic under the facts of this case.

**Adjustment for Role in the Offense**

U.S.S.G. §3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. §3B1.2, comment. (n.3A). Subsection (b) applies to a defendant so described who is less culpable than most other participants, but whose role could not be described as minimal. U.S.S.G. §3B1.2, comment. (n. 5).

Barnett submits that he was a minor participant, for the following reasons:

Despite possessing firearms on two occasions (overt act nos. 10 and 40), he was a victim of violence at least as many times (¶27) and on the last occasion he was, in fact, his own victim (¶26). The record supports the inference that he possessed firearms on these occasions for his own protection; however, he never used the firearms, nor was he involved with the widespread violent activities of Boot Camp. As for his drug-dealing activities, the record shows that he was no more than a street-level dealer of small quantities ("dime bags") of cocaine base. At the time of overt act no. 1, he was 16 years old, and he sold $10.00 worth of cocaine base to an undercover officer (¶46). Several months later, in an incident that is not alleged as an act of the conspiracy under indictment (¶48), he possessed nine small baggies of cocaine base. In overt act no. 10, he possessed ten small baggies (¶49). The fact that his sentencing exposure is limited by the stipulation to the drug quantity set forth in the plea agreement does not preclude the application of U.S.S.G. §3B1.2, *cf.* comment. (n.3B). For one thing, Barnett did not plead guilty to a lesser offense. Secondly, the stipulated quantity takes into account not only his own conduct but his indirect responsibility for "the relevant conduct of his co-conspirators" as well (Plea Agreement ¶4). Therefore, it cannot be said that he claims to be a minor participant in his own conduct, *cf. United States v. Lampkins*, 47 F.3d 175, 181

(7th Cir. 1995). Finally, Barnett was incarcerated for substantial periods of time during the course of the conspiracy, during which periods he did not engage in any conduct in furtherance of the conspiracy.

As stated in the presentence report (¶33), the applicable guidelines in this case are based on the underlying activity of possession and distribution of cocaine base, which are found in U.S.S.G. §2D1.1; this section provides that the maximum base level for a minor participant is 30. U.S.S.G. §2D1.1(a)(3). Applying the two-level weapons enhancement under U.S.S.G. §2D1.1(b)(1)[3] results in an offense level of 32, subject to a two-level adjustment under U.S.S.G. §3B1.2(b) [see also U.S.S.G. §3B1.2, comment. (n.6)], resulting in an adjusted offense level of 30. Assuming an adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and (b) (¶¶39, 40), the total offense level will be 27.

### Motion for Downward Departure-Anomalous Result under Application Note 4

As a general rule, the Guidelines provide that prior relevant conduct is to be factored into the base offense level rather than the defendant's criminal history score, *cf.* U.S.S.G. §4A1.2(a)(1). However, the Sentencing Commission created an exception in RICO cases by providing that where a defendant has previously been convicted for a RICO predicate act, that conviction should be factored into the defendant's criminal history score rather than the base offense level. U.S.S.G. 3E1.1, comment. (n.4) ("Application Note 4"). This has been attributed to the view that "a previously convicted RICO offender is in effect a repeat offender who breaks the law once by committing a predicate act and again by engaging in a pattern of racketeering activity." *United States v. Marrone*, 48 F.3d 735, 738 (3rd Cir. 1995).

---

[3]See note 2, *supra*.

In this case, Barnett's prior sentences for conduct related to the offense of conviction comprise more than half of his total criminal history points: 5 of the subtotal of 12 criminal history points (¶¶46, 49), as well as the 3 additional points assessed under U.S.S.G. ¶4A1.2(d) and (e) (¶¶54, 55). This may well be the result intended by the Sentencing Commission, for the reasons noted above. At the same time, however, the offense level is derived from, and greatly enhanced by, the same or related conduct, *i.e.* drug distribution and weapons possession [U.S.S.G. §§2D1.1, 2D1.1(b)(1)], and not from the substantive RICO offense [U.S.S.G. §3E1.1].

Application Note 4 also states that a guideline departure may be warranted if the treatment under U.S.S.G. §4A1.2(a)(1) of previously imposed sentences for acts which were part of the "pattern of racketeering activity" produces an anomalous result in a particular case. In this case, the anomalous result is that Barnett's prior acts substantially enhance his offense level as well as his criminal history category. Barnett submits that, when combined with the substantial imprisonment ranges under the applicable U.S.S.G. §2D1.1 offense level, this treatment produces an excessive sentence. Therefore, he moves for a downward departure in accordance with Application Note 4, so as to "produce a result consistent with the distinction between the instant offense and criminal history found throughout the guidelines." U.S.S.G. §2E1.1, comment. (n.4).

**Downward Departure from Criminal History Category**

In the alternative, Barnett moves for a downward departure pursuant to U.S.S.G. 4A1.3 on the ground that his criminal history category of VI significantly over-represents the seriousness of criminal history and the likelihood that he will commit further crimes.

In making this motion, Barnett asks the Court to look beyond the admittedly serious nature of the crimes perpetrated in the course of the "Boot Camp Conspiracy" and examine his individual

record. As noted under the argument for role adjustment, *supra*, Barnett's participation was that of a street-level dealer of "dime bag" quantities of cocaine base. He committed a substantial portion of the underlying acts, as well as his unrelated criminal acts, seven to nine years ago, when he was between 16 and 18 years old. In fact, six of his 12 subtotal criminal history points were incurred during this time period.

In addition, Barnett asks the Court to take into consideration the information contained in Part C of the presentence report, along with the additional information presented with this memorandum. As stated below, Barnett had abandoned his past conduct and was in the process of turning the corner when he was arrested.

Finally, the Court would not be abdicating its responsibility to impose substantial punishment under the Guidelines by granting this motion. Regardless of the Court's ruling as to the offense level, the possible imprisonment ranges are severe under any criminal history category.

### Character and Background

Rasue Barnett is a young man whose personal history is a virtual recipe for a life of crime, and it may be said that his life to date has been a self-fulfilling prophecy. However, he respectfully asks the Court not to write him off, but to consider his potential for becoming a productive member of society. As stated in the presentence report (¶72), Barnett found employment with Rafael Ramos in the spring of 2003, while he was awaiting sentencing for weapons possession (¶52) and before he was arrested for the charges in the instant case. Attached hereto is a copy of a letter that Mr. Ramos wrote to Judge Brunetti in anticipation of that sentencing, in which he describes Barnett as "a good worker and very dependable" and "a great asset".

Not only did Barnett learn new skills at this job, he also learned the satisfaction of doing

-6-

productive work that was appreciated by others. For example, while working on a project rehabilitating city property, he was greeted by Syracuse Mayor Matt Driscoll (see attached photograph). In short, he was starting to develop, for the first time in his life, one of the most important characteristics for personal success: self-esteem.

Finally, we submit, as an attachment, a series of letters from responsible members of the community and family members, all of whom attest to Barnett's character in extremely positive terms.

In consideration of all the information that has been presented, Barnett respectfully requests the Court to view him as an individual who, at the time of his arrest, had already abandoned his past conduct and was in the process of turning the corner, and to impose sentence accordingly.

## Conclusion

On the basis of the foregoing, as well as the information contained in the presentence report, Barnett respectfully requests that the Court:

1. Determine that the offense level is 32; that the adjusted offense level, after role adjustment, is 30; and that after adjustment for acceptance of responsibility, the total offense level is 27;

2. Grant a downward departure on the ground of an anomalous result under Application Note 4 to U.S.S.G. §2E1.1;

3. Grant a downward departure from criminal history category VI to a criminal history category that accurately represents the seriousness of his criminal history and the likelihood of recidivism, and no higher than criminal history category V;

4. Impose sentence at the minimum of the applicable range for imprisonment;

 5. Waive the imposition of a fine;

 6. Recommend placement in an appropriate substance abuse treatment program; and

 7. Recommend designation to an institution as close as possible to Syracuse, New York, to the extent such designation is consistent with his security designation and with the availability of appropriate programs.

Dated: November 28, 2004

                Respectfully submitted,

                s/ ***Craig P. Schlanger***
                CRAIG P. SCHLANGER
                Attorney for Defendant
                Bar Roll No. 102544
                201 East Jefferson Street, Suite 530
                Syracuse, New York 13202-2587
                (315) 422-1122
                schlangerlaw@aol.com

TO: LAWRENCE K. BAERMAN
    Clerk of District Court

    HON. NORMAN A. MORDUE
    United States District Judge

    JOHN M. KATKO
    Assistant United States Attorney

    MICHAEL J. KESTER
    United States Probation Officer